IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INTERNATIONAL AIR RESPONSE, INC., Plaintiff, | ) | |
| v. | ) | No. 00-428 (Judge Christine O.C. Miller) |
| THE UNITED STATES, Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

Defendant, the United States, pursuant to this Court's order dated July 21, 2006, and Appendix A to the Rules of the United States Court of Federal Claims, respectfully submits the following memorandum of contentions of law and fact.

## STATEMENT OF FACTS

______Plaintiff, International Air Response, Inc. ("IAR") was a participant in what was known as the United States Forest Service's Historic Aircraft Exchange Program (the "exchange program"). Under the auspices of the exchange program, the Forest Service obtained surplus military aircraft from the General Services Administration ("GSA") and the Air Force, then exchanged them on a one-for-one basis for aircraft provided by IAR and other program participants.

IAR and the Forest Service entered into an exchange agreement that was executed by IAR (then known as T&G/Douglas County Aviation) and the Forest Service in September 1989. DX 3.[1] Pursuant to the exchange agreement, the Forest Service provided three Lockheed C-130A aircraft to IAR. IAR provided a Douglas DC-7B aircraft, a Beechcraft SNB-5 aircraft, and a Sikorsky UH-19B helicopter.

[1] "DX __" refers to exhibits numbered on defendant's list.

The Department of Agriculture's Office of Inspector General ("OIG") determined in a report published in October 1992 that the Forest Service did not have the authority to exchange the aircraft and had not complied with Federal property regulations. The OIG's report cited three main reasons.

First, the exchange program did not comply with the regulation concerning exchanges of historic items, 41 C.F.R. § 101-46.203 (1988)[2], which provided:

> In acquiring items for historical preservation or display at Federal museums, executive agencies may exchange historic items in the museum property account . . . provided the exchange transaction is documented and certified by the agency head to be in the best interest of the Government and all other provisions of this part are met. The documentation must contain a determination that the item exchanged and the item acquired are historic items as defined in § 101-46.001-3.

The exchange program violated this regulation because the surplus aircraft that the Forest Service provided were not taken from museum property accounts. In addition, neither the surplus aircraft provided by the Forest Service nor the aircraft provided by IAR qualified as "historic" aircraft pursuant to 41 C.F.R. § 101-46.001-4 (1988), which stated: "'Historic item' means property having added value for display purposes because of its historical significance that is greater than the fair market value of the item for continued use. Items that are commonly available and remain in use for their intended purpose, such as military aircraft still in use by active or reserve units, would not be regarded as historic items."

Second, the exchange program did not comply with the one-year holding period required by 41 C.F.R. § 101-46.202(c)(10) (1988). The Forest Service obtained surplus C-130s from the

---

[2] Copies of the relevant regulations in effect at the time of the exchange are included in the appendix hereto.

Air Force and immediately exchanged them with IAR. 41 C.F.R. § 101-46.202(c)(10) does not authorize an agency to exchange property acquired from another agency until one year after acquisition.

Third, GSA never determined the aircraft to be surplus property. GSA's determination was required by 40 U.S.C. § 472(g) and 41 C.F.R. § 101-43.311 (1988).

In addition to the three C-130s involved in this case, IAR acquired two C-130s through Roy Reagan, a private broker who had obtained the C-130s through the exchange program. IAR assigned the Reagan C-130s to a financing company. The Forest Service learned that the financing company was attempting to sell the aircraft, and advised IAR in a letter dated February 23, 1993:

> In an effort to ensure that there exists among private contractors an airtanker fleet that is adequate to meet aerial firefighting needs, excess United States Government aircraft suitable for use as airtankers were exchanged for older aircraft. This exchange, however, was conducted by no official of the United States Government with proper authority to do so. You should be aware that the United States Government is not bound by the unauthorized acts of its agents or employees.
>
> You also should be aware that because these aircraft are surplus military aircraft on the U.S. Munitions List and certified only in the Restricted Category by the Federal Aviation Administration (FAA), use of the aircraft is limited to firefighting purposes. Finally, you should be aware of the implications of 18 U.S. Code 641 with regard to any actions you may take.
>
> We advise you not to take any action with respect to these aircraft that is prejudicial to the interests of the United States.

Def. Ex. 11.

On November 27, 1998, the Forest Service's contracting officer, Ronald Hooper, issued a final decision. Def. Ex. 14. The decision stated that the Forest Service had no authority to enter into the exchange agreement. The decision continued: "Accordingly, I must declare the exchange agreement void from the beginning. Being void from the beginning means that no title exchange ever occurred. The Government still owns the former military aircraft. T&G/Douglas County Aviation (now doing business as International Air Response) still possesses title to its historic aircraft. The Government hereby requests the return of its aircraft and is prepared to return your historic aircraft." IAR has not complied with the contracting officer's request to return the C-130s to the Government.

After IAR was dismissed from a related case in the United States District Court for the District of Arizona (United States v. Reagan, Civ. No. 97-169), IAR filed its complaint in this Court on January 20, 2000. The complaint seeks rescission of the contracting officer's decision that voided the exchange agreement, costs, and attorney fees. The Government's counterclaim seeks $2,400,000 pursuant to a theory of unjust enrichment or implied-in-law contract.

**ARGUMENT**

IAR is relying upon a provision of the Federal Property and Administrative Services Act, 40 U.S.C. § 544 (the "safe harbor"), which provides that an "instrument executed by or on behalf of an executive agency purporting to transfer title or other interest in surplus property under this chapter is conclusive evidence of compliance with the provisions of this chapter concerning title or other interest of a bona fide grantee or transferee for value and without notice of lack of compliance." IAR does not qualify for this safe harbor because it was not a bona fide transferee for value and because it knew or should have known that the Forest Service had not complied

with the surplus property statutes and regulations. In addition, the United States Court of Claims held that the safe harbor does not apply to instruments or appliances relating to the national defense if the United States has demanded their return. Thus, IAR is obliged to return its C-130s to the Forest Service and compensate the Government for its use of the C-130s from 1990 to the present.

I. IAR Knew Or Should Have Known That The Forest Service Was Not Authorized To Enter Into The Exchange Agreement

IAR does not qualify for the Federal Property and Administrative Services Act safe harbor because IAR was not a bona fide transferee for value without knowledge of legal noncompliance by the Forest Service. In 1989, IAR wrote letters to its elected representatives, complaining that the Forest Service had not responded to IAR's request to participate in the program. Def. Ex. 1 and 2. The letters note that one of the program participants had exchanged aircraft "that have only salvage value of approximately $5,000.00 each for a $2,500,000.00 C-130 aircraft." The letters concluded: "The problem we have is we paid real money for our C-130's and can't compete with a give-away program, which is being administered by a select basis to two certain operators which eliminates the competition."

IAR's letters accurately summarize the exchange program's most egregious flaw: the Forest Service was exchanging valuable C-130 aircraft for aircraft worth little more than salvage value. IAR was correct that the exchange program was essentially a give-away program. The evidence at trial will establish that the aircraft IAR provided in the exchange were not of comparable value to the C-130s it received. Indeed, the enormous difference in the value of consideration provided and received by IAR is what prompted IAR to demand that it be allowed

to participate in the program. IAR knew that it was participating in a give-away, not a bona fide exchange for value. IAR knew or should have known that the give-away program was not authorized by law. Thus, IAR can find no refuge in the safe harbor.

## II. The Espionage Act Requires IAR To Return Surplus Military Aircraft To The United States Upon Demand

The United States Court of Claims held that the safe harbor of the Federal Property and Administrative Services Act Federal Property Act is subordinate to the Espionage Act, 18 U.S.C. § 793. IAR is obliged, pursuant to the Espionage Act, to return the C-130 aircraft upon the demand of the United States.

The Espionage Act provides that "[w]hoever lawfully having possession of, access to, control over, or being entrusted with any . . . instrument, appliance, or note relating to the national defense . . . willfully retains the same and fails to deliver it on demand to the officer or employee of the United States entitled to receive it" violates the act. 18 U.S.C. § 793(d). The Court of Claims held in Dubin v. United States, 289 F.2d 651 (Ct. Cl. 1961) ("Dubin I"), and 363 F.2d 938 (Ct. Cl. 1966) ("Dubin II") that the Espionage Act applies even to innocent purchasers of surplus military equipment.

In Dubin I, the plaintiff acquired radar and radio equipment, which had been sold by the Government as surplus property. 289 F.2d at 653. The plaintiff had bought some of the equipment directly from the government at auction, and some from third parties. Id. The Government later discovered that the equipment contained classified technology and had been sold in violation of a Navy regulation. Id. The Government demanded the return of the equipment. The plaintiff complied, then sued in the Court of Claims for compensation. Id.

The Government successfully argued in Dubin I that the controlling statute was the Espionage Act. The Court of Claims held that the Federal Property and Administrative Services Act "could not have been intended to make it lawful, in the face of the Espionage Act, for one to hold on to national defense devices which he had purchased because of a mistake on the part of the selling official." Id. at 654. Therefore, "the plaintiff's title and possession were completely vulnerable. All that was needed to destroy them was an official demand that possession be surrendered." Id. at 655.

Upon remand to the trial commissioner, the plaintiff in Dubin contested whether the radar and radio equipment qualified as instruments or appliances relating to national defense for purposes of the Espionage Act. On appeal in Dubin II, the majority opinion in the Court of Claims answered this question in the affirmative. 363 F.2d at 942. Judge Davis filed a concurring opinion because he disagreed with the majority's "apparent holding that retention of the equipment involved here would have violated the Espionage Act even if the items were all unclassified." 363 F.2d at 943.

As in Dubin, the military surplus property at issue here qualifies as an "instrument [or] appliance" relating to the national defense. The President has made this determination by placing the C-130 on the United States Munitions List pursuant to the Arms Export Control Act, 22 U.S.C. §§ 2778 and 2794. The Arms Export Control Act provides in part:

> In furtherance of world peace and the security and foreign policy of the United States, the President is authorized to control the import and the export of defense articles and defense services and to provide foreign policy guidance to persons of the United States involved in the export and import of such articles and services. The President is authorized to designate those items which shall be considered as defense articles and defense services for the purposes

> of this section and to promulgate regulations for the import and export of such articles and services. The items so designated shall constitute the United States Munitions List.

22 U.S.C. § 2778(a)(1)

The Munitions List includes "aircraft . . . which are specifically designed, modified, or equipped for military purposes." 22 C.F.R. § 121.1, Category VIII. Demilitarized aircraft are expressly included in this category. 22 C.F.R. § 121.3. The Munitions List excludes certain models of demilitarized cargo aircraft, but the C-130 is not one of the excluded models. Id.

Thus, the President has determined pursuant to Congressional authorization that the C-130 is a "defense article" subject to export controls. Pursuant to this determination and the very broad terms of the Espionage Act, the C-130 is an "instrument [or] appliance . . . relating to the national defense." 18 U.S.C. § 793(d). As in Dubin, military surplus property was sold to IAR as a result of a mistake by the selling official. As in Dubin, IAR's title and possession were "completely vulnerable" and "[a]ll that was needed to destroy them was an official demand that possession be surrendered." 289 F.2d at 655. Thus, IAR has been obliged to return its C-130s to the Government from the time of the contracting officer's final decision dated November 27, 1998.

III. The Government Is Entitled To Recover Pursuant To Its Counterclaim

As discussed above, IAR came into possession of valuable Government property through an unauthorized transaction, and has refused to return the property upon demand. Accordingly, IAR is liable to the Government pursuant to a theory of unjust enrichment or implied-in-law contract. Although the Court does not generally possess jurisdiction to entertain a claim based upon restitution or implied-in-law contract, an exception exists for counterclaims by the

Government. 28 U.S.C. § 1503; BLH, Inc. v. United States, 13 Cl. Ct. 265, 275 (1987).

The evidence at trial will show the extent to which IAR has been unjustly enriched by its use of the Government's C-130 aircraft. For example, IAR asserted in correspondence that other C-130s exchanged in the program were worth $2,500,000. Def. Ex. 1 and 2. Pursuant to the common law of unjust enrichment, IAR is obliged to account to the Government for the use of the C-130s. Restatement of Restitution § 1 (1937) ("A person who has been unjustly enriched at the expense of another is required to make restitution to the other."); Restatement of Restitution § 157 (1937) ("A person under a duty to another to make restitution of property received by him or of its value is under a duty (a) to account for the direct product of the subject matter received while in his possession, and (b) to pay such additional amount as compensation for the use of the subject matter as will be just to both parties in view of the fault, if any, of either or both of them."); and Restatement (Third) of Restitution and Unjust Enrichment § 9, Tentative Draft No. 1 (2001) ("A person who confers on another, by mistake, a benefit other than money has a claim in restitution as necessary to prevent the unjust enrichment of the recipient.").

**STATEMENT OF ISSUES OF FACT AND LAW TO BE DECIDED BY THE COURT**

1. Whether IAR knew or should have known that the exchange program was conducted in violation of law.

2. Whether IAR was a bona fide transferee for value.

3. Whether the Federal Property and Administrative Services Act is subordinate to the Espionage Act.

4. The extent to which IAR has been unjustly enriched by use of the C-130 aircraft.

**OBJECTIONS TO PLAINTIFF'S EXHIBITS**

At this time we cannot state whether we have objections to IAR's proposed exhibits. IAR did not provide an exhibit list until the evening of yesterday, November 6, 2006. IAR's exhibits were not delivered to us until 3:45 p.m. today.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/ Roger A. Hipp
ROGER A. HIPP
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Tel. (202) 305-3091
Fax (202) 307-0972

November 7, 2006

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 7th day of November 2006, a copy of the foregoing "DEFENDANT'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT" was electronically filed. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

s/ Roger A. Hipp

**CODE OF FEDERAL REGULATIONS**
**TITLE 41--PUBLIC CONTRACTS AND PROPERTY MANAGEMENT**
**CHAPTER 101--FEDERAL PROPERTY MANAGEMENT REGULATIONS**
**SUBCHAPTER H--UTILIZATION AND DISPOSAL**
**PART 101-43--UTILIZATION OF PERSONAL PROPERTY**
**Subpart 101-43.3--Utilization of Excess.**
**s 101-43.311** Determination of excess as surplus.

s **101-43.311-**1 Reportable property.

Excess personal property, when reported to GSA in accordance with s 101-43.304 and not transferred to other Federal agencies, shall become surplus at the close of business on the surplus release date, which should be evidenced on the report of excess personal property. The surplus release date will be established to occur 60 calendar days or less after receipt of the report of excess personal property in the appropriate GSA regional office unless the property is held for redistribution in accordance with s 101-43.309-4. The appropriate GSA regional office will coordinate surplus release date extensions with the reporting activity to minimize impact on the utilization and disposal process.

PART 101-43--UTILIZATION OF PERSONAL PROPERTY

Authority: Sec. 205(c), 63 Stat. 390; 40 U.S.C. 486(c).

Source: 29 FR 16012, Dec. 1, 1964, unless otherwise noted.

Subpart 101-43.3--Utilization of Excess.

Source: 53 FR 16092, May 5, 1988, unless otherwise noted.

41 C. F. R. s **101-43.311-**1

41 CFR s **101-43.311-**1

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**CODE OF FEDERAL REGULATIONS**
**TITLE 41--PUBLIC CONTRACTS AND PROPERTY MANAGEMENT**
**CHAPTER 101--FEDERAL PROPERTY MANAGEMENT REGULATIONS**
**SUBCHAPTER H--UTILIZATION AND DISPOSAL**
**PART 101-43--UTILIZATION OF PERSONAL PROPERTY**
**Subpart 101-43.3--Utilization of Excess.**
**s 101-43.311** Determination of excess as surplus.

s **101-43.311**-2 Nonreportable property.

(a) Property excepted from the reporting requirements of s 101-43.304 shall become surplus when it has been made available by the holding agency for Federal use for a minimum of 21 calendar days after excess determination and has not been selected for transfer to other Federal agencies. Holding agencies shall annotate property records in a manner that will indicate to authorized Federal agency representatives the date of the excess determination. The property will become surplus at the close of business on the surplus release date, which normally will occur 21 calendar days after the holding agency determines the property to be available for screening as excess unless extended by GSA. Authorized Federal agency representatives may request and, with the approval of GSA, holding agencies will grant additional time not to exceed 30 calendar days, unless otherwise agreed upon by the holding agency and the GSA regional office concerned. The release as surplus of property not transferred to other Federal agencies will be deferred by the same lengths of time.

(b) During the screening period following the determination that the property is excess, no holding agency shall take for its use any property in its custody which has been selected by a GSA area utilization officer for further screening or transfer for utilization, except with the approval of the appropriate GSA regional office; provided that holding activities may withdraw such property to meet their essential emergency requirements without this prior approval. The appropriate GSA regional office shall be notified of any such actions.

(c) This section is applicable to all nonreportable excess property other than perishables, dangerous property, classified property, trading stamps, and Nuclear Regulatory Commission-controlled materials.

PART 101-43--UTILIZATION OF PERSONAL PROPERTY

Authority: Sec. 205(c), 63 Stat. 390; 40 U.S.C. 486(c).

Source: 29 FR 16012, Dec. 1, 1964, unless otherwise noted.

Subpart 101-43.3--Utilization of Excess.

Source: 53 FR 16092, May 5, 1988, unless otherwise noted.

41 C. F. R. s **101-43.311**-2

41 CFR s **101-43.311**-2

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**CODE OF FEDERAL REGULATIONS**
**TITLE 41--PUBLIC CONTRACTS AND PROPERTY MANAGEMENT**
**CHAPTER 101--FEDERAL PROPERTY MANAGEMENT REGULATIONS**
**SUBCHAPTER H--UTILIZATION AND DISPOSAL**
**PART 101-43--UTILIZATION OF PERSONAL PROPERTY**
**Subpart 101-43.3--Utilization of Excess.**
s **101-43.311** Determination of excess as surplus.

s **101-43.311**-3 Property not utilized

Property determined to be surplus as provided in ss **101-43.311**-1 and **101- 43.311**-2 shall be held available for donation program screening in accordance with Part 101-44 before it shall be assigned for sale, abandonment, or destruction in accordance with Part 101-45. Property which requires reimbursement upon transfer, when determined surplus, shall not be available for donation but may be disposed of as provided in Part 101-45.

PART 101-43--UTILIZATION OF PERSONAL PROPERTY

Authority: Sec. 205(c), 63 Stat. 390; 40 U.S.C. 486(c).

Source: 29 FR 16012, Dec. 1, 1964, unless otherwise noted.

Subpart 101-43.3--Utilization of Excess.

Source: 53 FR 16092, May 5, 1988, unless otherwise noted.

41 C. F. R. s **101-43.311**-3

41 CFR s **101-43.311**-3

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**CODE OF FEDERAL REGULATIONS**
**TITLE 41--PUBLIC CONTRACTS AND PROPERTY MANAGEMENT**
**CHAPTER 101--FEDERAL PROPERTY MANAGEMENT REGULATIONS**
**SUBCHAPTER H--UTILIZATION AND DISPOSAL**
**PART 101-46--UTILIZATION AND DISPOSAL OF PERSONAL PROPERTY PURSUANT TO EXCHANGE/SALE AUTHORITY**

s **101-46.001-3** Exchange.

"Exchange" means to replace a nonexcess personal property item by trade or trade-in with the supplier of the replacement item when the value of the replaced item is used to reduce or offset the cost of the acquired item. The supplier may be a Government agency, commercial or private organization, or an individual.

PART 101-46--UTILIZATION AND DISPOSAL OF PERSONAL PROPERTY PURSUANT TO EXCHANGE/SALE AUTHORITY

Authority: Sec. 205(c), 63 Stat. 390 (40 U.S.C. 486(c)).

Source: 53 FR 16125, May 5, 1988, unless otherwise noted.

41 C. F. R. s **101-46.001-3**

41 CFR s **101-46.001-3**

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**CODE OF FEDERAL REGULATIONS**
**TITLE 41--PUBLIC CONTRACTS AND PROPERTY MANAGEMENT**
**CHAPTER 101--FEDERAL PROPERTY MANAGEMENT REGULATIONS**
**SUBCHAPTER H--UTILIZATION AND DISPOSAL**
**PART 101-46--UTILIZATION AND DISPOSAL OF PERSONAL PROPERTY PURSUANT TO EXCHANGE/SALE AUTHORITY**

s **101-46.001-4** Historic item.

"Historic item" means property having added value for display purposes because of its historical significance that is greater than the fair market value of the item for continued use. Items that are commonly available and remain in use for their intended purpose, such as military aircraft still in use by active or reserve units, would not be regarded as historic items.

PART 101-46--UTILIZATION AND DISPOSAL OF PERSONAL PROPERTY PURSUANT TO EXCHANGE/SALE AUTHORITY

Authority: Sec. 205(c), 63 Stat. 390 (40 U.S.C. 486(c)).

Source: 53 FR 16125, May 5, 1988, unless otherwise noted.

41 C. F. R. s **101-46.001-4**

41 CFR s **101-46.001-4**

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**CODE OF FEDERAL REGULATIONS**
**TITLE 41--PUBLIC CONTRACTS AND PROPERTY MANAGEMENT**
**CHAPTER 101--FEDERAL PROPERTY MANAGEMENT REGULATIONS**
**SUBCHAPTER H--UTILIZATION AND DISPOSAL**
**PART 101-46--UTILIZATION AND DISPOSAL OF PERSONAL PROPERTY PURSUANT TO EXCHANGE/SALE AUTHORITY**
**Subpart 101-46.2--Authorization**

s **101-46.202** Restrictions and limitations.

(a) Items which are found in any of the Federal supply classification groups listed below are not eligible for handling under the provisions of this part.

Federal Supply Classification Group Number and Identification

10 Weapons.

11 Nuclear ordnance.

12 Fire control equipment.

14 Guided missiles.

15 Aircraft and airframe structural components.

16 Aircraft components and accessories.

17 Aircraft launching, landing, and ground handling equipment.

20 Ship and marine equipment.

22 Railway equipment.

31 Bearings.

32 Woodworking machinery and equipment, except lathes, milling machines, and saws, circular or band.

34 Metalworking machinery, except drill presses, lathes, milling machines, and saws, circular or band.

40 Rope, cable, chain, and fittings.

41 Refrigeration, air conditioning, and air circulating equipment.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 Firefighting, rescue, and safety equipment.

44 Furnace, steam plant, and drying equipment; and nuclear reactors.

45 Plumbing, heating, and sanitation equipment.

46 Water purification and sewage treatment equipment.

47 Pipe, tubing, hose, and fittings.

48 Valves.

51 Hand tools.

53 Hardware and abrasives.

54 Prefabricated structures and scaffolding.

55 Lumber, millwork, plywood, and veneer.

56 Construction and building materials.

68 Chemicals and chemical products, except medicinal chemicals.

71 Furniture.

75 Office supplies and devices, except cards, tabulating.

83 Textiles, leather, furs, apparel and shoe findings, tents and flags.

84 Clothing, individual equipment, and insignia.

(b) The application of exchange allowances or proceeds of sale in whole or in part payment for personal property acquired is authorized only when all of the following conditions apply:

(1) The item sold or exchanged is similar to the item acquired. Sufficient data shall be made a matter of record to establish that the acquired item and the replaced item were similar. Items are deemed similar when:

(i) The replaced item and the acquired item are identical;

(ii) The acquired item is designed and constructed for the same specific purpose as the replaced item, or both constitute parts or containers for identical or similar end items; or

(iii) The acquired item and the replaced item both fall within a single category in the following list:

Exchange/Sale Similarity List

Agriculture products, processed foods, and forage.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ammunition and ammunition components.

Animals and animal products.

Batteries, storage.

Cards, tabulating.

Ditching machines.

Dozer blades.

Drill presses.

Drugs, biologicals, and official reagents.

Earth augers.

Graders, self-powered and towed.

Lathes.

Machines, adding and calculating.

Machines, dictating and transcribing.

Machines, duplicating.

Machines, punched card, bookkeeping, tabulating and accounting.

Milling machines.

Mixers, concrete, portable or truck mounted.

Pile drivers.

Plows, snow, motorized.

Road rollers, wheeled and sheepsfoot.

Saws, circular or band.

Scrapers, earth moving, towed.

Sedans, station wagons, coupes, limousines.

Spreaders, aggregate and lime.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Tractors, warehouse.

Tractors, wheeled or crawler, with or without special attachments up to 65 h.p.

Trailers, general purpose, multiple axle.

Trailers, general purpose, single axle.

Trailers, tank mounted.

Trucks, forklift.

Trucks, general purpose, cargo and construction, 12,500 GVW through 28,000 GVW (including truck tractors, dump, multiple drive, etc.)

Trucks, general purpose and utility, up to 12,500 GVW (including suburbans, carryalls, and sedan deliveries).

Trucks, straddle.

Trucks, tank (special purpose trailer of which the tank is an integral part of the construction).

Trucks, warehouse, platform, electric and gasoline powered.

Typewriters, manual and electric.

(2) The items sold or exchanged (with the exception of automatic data processing equipment to be exchanged by GSA) are not excess, and the items acquired are needed in the conduct of approved programs;

(3) One item is to be acquired to replace one similar item. The only exceptions to the one-for-one rule shall be:

(i) The items acquired must perform all or substantially all of the tasks in which the old items would otherwise be used; and

(ii) The items sold or exchanged and the items acquired are parts or containers fcr identical or similar end items.

(4) There has been at the time of exchange or sale (or at the time of acquisition if it precedes the sale) a written administrative determination to apply the exchange allowance or proceeds of sale in acquiring property in accordance with this Subpart 101-46.2;

(5) The transaction will foster the economical and efficient accomplishment of an approved program; and

(6) The item to be exchanged or sold was acquired for official use and not for the principal purpose of exchange or sale.

(c) This part shall not be construed to authorize:

(1) The acquisition of personal property by an executive agency when such acquisition is not otherwise authorized by law.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(2) The acquisition of personal property by an executive agency in contravention of:

(i) Any restriction upon the procurement of a commodity or commodities, or

(ii) Any replacement policy or standard, prescribed by the President, the Congress, or by the Administrator of General Services.

(3) The acquisition of personal property other than under a consolidated purchasing or stores program or Federal Supply Schedule contract where procurement under such program or contract is required by regulations or other directives prescribed by the Administrator of General Services.

(4) The sale, transfer, or exchange of excess property (other than automatic data processing equipment to be exchanged by GSA) or surplus property under this part.

(5) The sale, transfer, or exchange of strategic and critical materials, unless the provisions of s 101-14.103-2 are met.

(6) The sale, transfer, or exchange of Nuclear Regulatory Commission-controlled materials (as defined in Part 101-43) except in accordance with applicable regulations of the Nuclear Regulatory Commission (See 10 CFR Parts 30, 40, and 70).

(7) The sale or exchange of controlled substances, except in accordance with Part 101-45.

(8) The sale of personal property in new or unused condition under this part.

(9) The sale, transfer, or exchange of scrap materials under this part, except in the case of scrap gold for fine gold.

(10) Even though otherwise eligible, the exchange or sale of property which was originally acquired as excess or forfeited property, or from another source other than new procurement, unless such property has been placed in official use by the acquiring agency for a minimum of 1 year. Forfeited property placed in official use for less than 1 year may be exchanged or sold if the head of the agency certifies that a continuing valid requirement exists, but the specific item in use no longer meets that requirement, and that the exchange or sale meets all other requirements of this part. Property exchanged or sold subject to such certification shall be reflected separately on the annual report required by s 101-46.305.

(11) The exchange or sale of property which is dangerous to public health or safety without first rendering such property innocuous or providing adequate safeguards therefor.

(12) The exchange or sale of combat material pursuant to this part without first demilitarizing such property if such demilitarization is found by a fully authorized official of the executive agency concerned to be in the best interest of public health, safety, or security. Such demilitarization may include rendering such property innocuous, stripping from it any confidential or secret characteristics, or making it unfit for military use. Demilitarization of property to be exchanged or sold shall be accomplished in such manner as to preserve so far as possible any civilian utility or commercial value of the property.

(d) This part does not apply to materials in the National Defense Stockpile (50 U.S.C. 98-98h), or the Defense Production Act inventory (50 U.S.C. App. 2093).

PART 101-46--UTILIZATION AND DISPOSAL OF PERSONAL PROPERTY PURSUANT TO

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXCHANGE/SALE AUTHORITY

Authority: Sec. 205(c), 63 Stat. 390 (40 U.S.C. 486(c)).

Source: 53 FR 16125, May 5, 1988, unless otherwise noted.

41 C. F. R. s **101-46.202**

41 CFR s **101-46.202**

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**CODE OF FEDERAL REGULATIONS**
**TITLE 41--PUBLIC CONTRACTS AND PROPERTY MANAGEMENT**
**CHAPTER 101--FEDERAL PROPERTY MANAGEMENT REGULATIONS**
**SUBCHAPTER H--UTILIZATION AND DISPOSAL**
**PART 101-46--UTILIZATION AND DISPOSAL OF PERSONAL PROPERTY PURSUANT TO EXCHANGE/SALE AUTHORITY**
**Subpart 101-46.2--Authorization**

s **101-46.203** Special authorizations.

(a) Notwithstanding any other provisions of this part, executive agencies may exchange, without monetary appraisal or detailed listing or reporting, books and periodicals in their libraries not needed for permanent use for other books and periodicals.

(b) In acquiring items for historical preservation or display at Federal museums, executive agencies may exchange historic items in the museum property account without regard to the Federal supply classification group or the requirement in s 101-46.202 to replace items on a one-for-one basis, provided the exchange transaction is documented and certified by the agency head to be in the best interest of the Government and all other provisions of this part are met. The documentation must contain a determination that the item exchanged and the item acquired are historic items as defined in s 101-46.001- 3. Historic items so exchanged shall be reflected separately on the annual report required by s 101-46.305.

PART 101-46--UTILIZATION AND DISPOSAL OF PERSONAL PROPERTY PURSUANT TO EXCHANGE/SALE AUTHORITY

Authority: Sec. 205(c), 63 Stat. 390 (40 U.S.C. 486(c)).

Source: 53 FR 16125, May 5, 1988, unless otherwise noted.

41 C. F. R. s **101-46.203**

41 CFR s **101-46.203**

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.