IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INTERNATIONAL AIR RESPONSE,<br>22000 South Price Road<br>Chandler, Arizona 85248,<br><br>Plaintiff,<br><br>vs.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | Case No. 00-428C<br><br>(Assigned to the Honorable Christine O.C. Miller)<br><br>E-Filed September 14, 2007 |

**MEMORANDUM IN SUPPORT OF ATTORNEYS' FEES AND COSTS**

IAR filed an Application for Attorneys' Fees on June 12 2007, after the Court issued a written order resolving the merits of this matter in IAR's favor on March 12, 2007. This memorandum is in support of the Application, and seeks an award of fees and costs under 28 U.S.C. § 2412(d)(1)(A).

## I. Introduction

This litigation, stemming back to 1994, hopefully is now over, the Government having dismissed its appeal of this Court's ruling on the merits. IAR asks, however, that this Court grant IAR an award of fees and certain costs under the EAJA to help mitigate the cost to IAR of this extended litigation.

## II. Entitlement

IAR brought this case asking that a November 27, 1998 Contracting Officer letter from the Forest Service be set aside. The Government defended the Contracting Officer's decision and counterclaimed against IAR for $2.4 million, plus interest.

IAR prevailed on both its claim and the defendant's counterclaim. At the conclusion of its March 12, 2007 ruling ("Ruling"), the Court directed the Clerk to "enter judgment (1) for plaintiff on plaintiff's prayer that the contracting officer's decision be set aside and (2) for plaintiff against defendant on defendant's counterclaim." (Ruling at 16). In sum, plaintiff was the prevailing party on its single claim for relief and the Government did not recover anything on its counterclaim.

Plaintiff is thus a "prevailing party" under 28 U.S.C. § 2412(d)(1)(A). (*See* Ruling at 7 (describing the result in the case as "quite one-sided")).

## III. Substantial Justification

IAR recognizes that the EAJA is not a mandatory fee-shifting statute, though it does create a presumption that a prevailing party will be entitled to a fee award. Because it is the Government's burden to establish that its position and conduct were substantially justified, IAR will reply more fully on this issue once the Government explains in its response why a fee award would not be appropriate in this case. Nevertheless, there are a few points that IAR believes the Court should consider from the outset in considering whether to grant IAR fees.

### A. IAR Is Requesting Only A Fraction of Its Total Fees.

IAR is seeking fees only for what is really the tail-end of this extended litigation, even though IAR has prevailed at every stop. As the Court noted in its Ruling (at 2-3), this case has a procedural history that goes back to 1994, in which the Government chose not to intervene in a *qui tam* case filed against IAR's predecessor and other airtanker companies in Oregon. IAR ultimately prevailed in that case (because the purported

whistleblower was not an original source), but, while the case was pending on appeal, the Government belatedly sought to intervene and was allowed to do so. The case then was remanded to District Court in Arizona.

In Arizona, the Government amended its complaint and, against IAR, asserted pretty much the same unjust enrichment, restitution-based claims that it later made against IAR before this Court. IAR prevailed in that Court on statute of limitations grounds.

IAR was forced to file the case before this Court, because, while its summary judgment motion was pending in Arizona, the Forest Service, virtually out of the blue (without any communication or dialog with IAR beforehand) issued its Contracting Officer's decision on November 27, 1998. The Government then counterclaimed, relying on the Contract Disputes Act, which at the time contained no statute of limitations, to assert the same theories of recovery it had asserted in Arizona, albeit under a different set of jurisdictional statutes. As noted, IAR ultimately prevailed in this Court on both its claim and the Government's counterclaim.

IAR is not seeking its substantial fees incurred in defending against the qui tam case, in which the Government declined to intervene and then later did so after effort had been expended to have the case dismissed in the trial court. Nor is IAR seeking the substantial fees it incurred in defending the Government's suit in Arizona and having that case dismissed, too.

This Application seeks fees solely incurred in prosecuting and defending claims in this particular matter. IAR does not believe it is able to seek fees in this Court for those

other stages of the litigation[1] and thus will be "out of pocket" the fees incurred elsewhere regardless of this Court's decision on the pending Application. In keeping with the EAJA's equitable principles, however, IAR thinks it relevant for the Court to consider that the fee award IAR seeks will compensate it for only a portion of the extended journey the Government forced IAR to endure.

### B. The Government's Failure to Acknowledge Its Own Position

For the first many years of this litigation, the Government's position was that the C-130As at issue were extremely valuable planes given their use as firefighting airtankers. It was largely on this premise – that the planes had so much value as firefighting airtankers – that the Government insisted it had received such a raw deal in its exchanges with the contractors that the exchange agreements had to be unwound.

In June 2002, while fighting a fire on a Forest Service job, a C-130A's wings broke off, causing a fatal crash. The Forest Service responded by grounding C-130As from its firefighting jobs, concluding that the planes were not safe to use as firefighting airtankers.

But notwithstanding its change of heart about the use of C-130As for firefighting, the Government in this case continued to insist up until trial that they had massive value to the Government and to companies such as IAR. A transcript is not available, but the Court may recall its own inquiry at the trial of the Forest Service representative as to why the Forest Service continued to press its case once its views about the planes had

[1] IAR did not seek fees in those other forums, because those cases, though broad in scope and heavily litigated, ended up resolving only preliminary issues.

changed. The Government offered only the thinnest of explanations.[2] Tellingly, in the end, the Government was able to present no evidence at trial to support its contention that the planes were worth anywhere near $2.4 million or even that they were worth more than the value of the planes IAR had exchanged. (*See* Ruling at 11-12).

The Government has a duty to make sure its position is substantially justified throughout the litigation. *See, e.g., PCI/RCI v. United States*, 37 Fed. Cl. 785, 788 (1997). The Government's position in this case was never substantially justified, but, in any event, it certainly was not after June 2002, a period in which most of the fees in this case were incurred.

**C. The Government's Settlement Conduct**

The Court recounts at least its view of settlement efforts in the Ruling (at 6-7), but a little elaboration is merited. The parties did reach a settlement, subject only to further approvals, after a lengthy conference before Judge Firestone, who worked very hard to facilitate the resolution both at and before the conference. In the Ruling, the Court noted that the Government backed out of the settlement because "defendant advised that an issue involving yet another agency, the Federal Administration, 'may force [defendant] to conclude the settlement proposal is not feasible.'" (*Id.* at 6). What actually occurred is that the Forest Service itself decided that a provision in the draft settlement term sheet involving actions the Forest Service was to take vis-à-vis the FAA was not acceptable to

[2] The best Mr. Hooper could come up with was that other airtanker companies had been persuaded to pay substantial sums to keep their planes and settle any claims against them.

the Forest Service. That is, the Forest Service backed out and refused to follow through on the proposed settlement it had negotiated; the FAA did not preempt the deal.

IAR wasted substantial time and attorney resources participating in the settlement conference, finalizing a term sheet proposal, and then seeking to follow through with the settlement only to learn the Forest Service had second thoughts. And the Forest Service did not even timely relay its rethinking: IAR heard about it when following up with the FAA as to whether the Forest Service was following through with its side of the bargain.[3]

IAR then made settlement offers pretrial that were sat on for some time and then rejected on the very eve of trial despite recommendation by the lawyers handling and overseeing this case. Then, IAR extended virtually the same offer after trial (notwithstanding the Court's oral ruling), which also was considered for some time and then rejected by someone invisible up the hierarchy. In these offers, the only attorneys' fees or costs IAR requested were those in connection with the failed settlement conference and related efforts (estimated at the time to be approximately $13,000).

**D. The Government Never Had A Case on the Merits**

IAR was not accused of misconduct or fraud. The Government made three primary claims as to why IAR nevertheless had a duty to return the planes. None had any merit.

[3] IAR does not claim that the Forest Service committed a legal breach of contract, because the term sheet made clear it was subject to further approvals. But the fact is that a senior Forest Service official, an agency lawyer, and its lawyer who represented the Forest Service in this case heavily negotiated the term sheet at the settlement conference and then the Forest Service official, upon consulting with others, simply had a change of heart.

The first was the alleged discrepancy between the value of the C-130As versus those exchanged by IAR. Putting aside that case law uniformly makes clear that any such discrepancy in value is irrelevant under 40 U.S.C. § 544, the Government utterly failed to provide any substantiation for argument, as the Court ultimately found.

The second argument the Government made was that IAR was not a *bona fide* purchaser of the planes because IAR allegedly "should have known that the Forest Service had not complied with the surplus property statute and regulations" and "should have known that the program was not authorized because" of the enormous difference in value between what was exchanged and what was received. (Ruling at 11, 12). But, as the Court observed, the authorization issue was complex enough that, even six years after the exchange transaction had taken place, the Forest Service itself was still taking the position that, as a legal matter, it "had authority to make the exchange." (*Id*. at 11). How it is that Woody Grantham in Arizona nevertheless "should have known" about such legal noncompliance is something the Government alleged but never seriously endeavored to prove.

Finally, the Court may recall that, deep into the proceedings, the Government began claiming that it was entitled to return of the planes under the Espionage Act, a demand that threatened IAR and its officers with severe civil and criminal liabilities. The claim was always pretextual – if IAR was willing to pay settlement proceeds, the Government's national security demands apparently would be resolved. Moreover, the claim was not asserted until over ten years into this litigation and, as the Court concluded, lacked merit anyway.

## IV. Amount

The total amount of attorneys' fees incurred in this matter is $170,236.00; IAR requests that the Court award it $153,212.40 for fees billed to date, representing 90% of the amount incurred and billed.[4] In addition, IAR requests an award reimbursing it for computer research charges of $18,660.42, court fees of $189, photocopying expenses of $1,195.36, long-distance telephone charges of $363.61, and a transcript expense of $241. Altogether, this totals $173,861.79. For anticipated fees and costs in preparing this memorandum and any reply, IAR asks that the Court award an additional $2,000, bringing the total to $175,861.79.

## V. Reasonableness

The complaint in this case was filed in July 2000; the Court issued its ruling on March 12, 2007. In its Ruling, the Court chronicled the many delays and detours the litigation took.

Of the fees incurred and costs incurred, approximately $65,053 were related to the Government's motion to dismiss the case on jurisdictional grounds and IAR's appeal from the order granting the motion. Although ultimately unsuccessful, the Government's position on that motion may have been substantially justified. Nevertheless, IAR does not believe these fees and costs should be carved out of any fee award.

---

[4] IAR has voluntarily reduced its fee request by 10% to reduce the Court's task of having to closely scrutinize each line item of plaintiff's bills and to avoid any arguments from the Government about the reasonableness of any specific line items in the invoices, which are Exhibit A to this memorandum.

In determining whether IAR's fees are reasonable and whether the Government's position was substantially justified, the Court must examine the entire history of the dispute. *See, e.g., Comm'r INS v. Jean*, 496 U.S. 154, 161-62 (1990); *KMS Fusion, Inc. v. United States*, 39 Fed. Cl. 593, 697 (1997). Viewed from this perspective, the Government has no entitlement to have the Court carve up IAR's fees for every motion or issue the Government may have raised (and lost) that may have been substantially justified. IAR received complete victory on the claim and counterclaim in the case and, viewed as a whole, the Government's position was not substantially justified.

Moreover, IAR's overall fees are reasonable. The undersigned was IAR's primary counsel on this matter; he charged his normal hourly rate for work done on the case, which ranged from $220 per hour when the complaint was filed to $390 per hour by the time of trial in late 2006. He represents that he is familiar with rates charged in Arizona and Washington, D.C. for similarly experienced lawyers on similarly complex matters and his rates charged are within the rates commonly charged by such lawyers. All other timekeepers who worked on the matter for IAR charged at or below their normal hourly rates.

The fees were primarily incurred in drafting the complaint, briefing and appealing the Government's motion to dismiss, responding to the counterclaim, preparing for and attending the extensive settlement conference before Judge Firestone as well as attempting to get a final settlement documented, spending substantial time researching and preparing a defense related to the Espionage Act claim, researching appropriate remedies and damages in the event the Court ordered the planes returned, preparing and

submitting the pretrial filings required by this Court, and preparing for and attending trial. There were substantial legal issues presented involving the CDA, the Espionage Act, and the Surplus Property Act. Rather than act in any way to expand the litigation unnecessarily, IAR's counsel went substantial periods of time without being paid and IAR and its counsel made every reasonable effort to facilitate settlement of the matter.

**VI. Conclusion**

The EAJA exists in large part for cases like this. As the Court concluded, "plaintiff was done wrong by the Forest Service." (Ruling at 4). It was jerked from one forum to another each time the Government's prospects dimmed where it or its representative had filed suit. Even on the jurisdictional issue, the Court may remember that the Government had conceded to the judge in Arizona that he had authority to issue his stay; the Government's position before this Court then became that the Arizona did not have such authority.

IAR was forced to "hang in there," spend resources and litigate through a baseless demand for return of the planes (which would have proved devastating to the small company), through a serious assertion that IAR was refusing to return the planes in violation of the Espionage Act, and through incredibly frustrating settlement efforts that reasonably should have yielded a resolution but never did. In the end, the Forest Service was demanding return of the aircraft or $2.4 million as restitution for aircraft that the Forest Service did not even think were safe to fly. IAR's fees and requested costs are reasonable and should be awarded.

Respectfully submitted,

Date: September 14, 2007

By: s/ Randy Papetti
Randy Papetti
Lewis and Roca LLP
40 North Central Avenue
Phoenix, Arizona 85004-4429
602-262-5337 Telephone
602-734-3865 Facsimile
Attorney of Record for Plaintiff
International Air Response