IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INTERNATIONAL AIR RESPONSE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 00-428 |
| | ) | (Judge Christine O.C. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPPOSITION TO**
**PLAINTIFF'S APPLICATION FOR ATTORNEY FEES AND COSTS**

Defendant, the United States, respectfully submits this opposition to the plaintiff, International Air Response, Inc. ("IAR")'s application for fees and expenses pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. For the reasons set forth in this brief, the Court should deny IAR's application.

STATEMENT OF THE ISSUES

1. Whether IAR is a party eligible for an EAJA award.

2. Whether the position of the United States in this litigation was substantially justified.

3. Whether IAR may recover fees and expenses incurred prior to April 7, 2003.

4. Whether IAR may recover attorney fees in excess of $125 per hour.

STATEMENT OF THE CASE

IAR was a participant in what was known as the United States Forest Service's Historic Aircraft Exchange Program (the "exchange program"). Tr. 155:23.[1] Under the auspices of the exchange program, the Forest Service obtained surplus military aircraft from the General

---

[1] "Tr. ___:___" refers to page and line citations to the trial transcript.

Services Administration ("GSA") and the Air Force, then exchanged them on a one-for-one basis for aircraft provided by IAR and other program participants.

IAR and the Forest Service entered into an exchange agreement that was executed by IAR (then known as T&G/Douglas County Aviation) and the Forest Service in September 1989. DX 3.[2] Pursuant to the exchange agreement, the Forest Service provided three Lockheed C-130A aircraft to IAR. IAR provided a Douglas DC-7B aircraft, a Beechcraft SNB-5 aircraft, and a Sikorsky UH-19B helicopter.

The Forest Service subsequently concluded that it did not have the authority to exchange the aircraft and had not complied with Federal property regulations. DX 14; Tr. 162:12-21. The Forest Services identified three main reasons why the exchanges were unauthorized.

First, the exchange program did not comply with the regulation concerning exchanges of historic items, 41 C.F.R. § 101-46.203 (1988)[3], which provided:

> In acquiring items for historical preservation or display at Federal museums, executive agencies may exchange historic items in the museum property account . . . provided the exchange transaction is documented and certified by the agency head to be in the best interest of the Government and all other provisions of this part are met. The documentation must contain a determination that the item exchanged and the item acquired are historic items as defined in § 101-46.001-3.

The exchange program violated this regulation because the surplus aircraft that the Forest Service provided were not taken from museum property accounts. Tr. 162:12-21.

---

[2] "DX __" refers to exhibits numbered on defendant's list.

[3] Copies of the relevant regulations in effect at the time of the exchange are included in the appendix hereto.

Second, neither the surplus aircraft provided by the Forest Service nor the aircraft provided by IAR qualified as "historic" aircraft pursuant to 41 C.F.R. § 101-46.001-4 (1988). Tr. 162:12-163:15. That regulation provided: "'Historic item' means property having added value for display purposes because of its historical significance that is greater than the fair market value of the item for continued use. Items that are commonly available and remain in use for their intended purpose, such as military aircraft still in use by active or reserve units, would not be regarded as historic items."

Third, the exchange program did not comply with the one-year holding period required by 41 C.F.R. § 101-46.202(c)(10) (1988). Tr. 164:18-165:1. The Forest Service obtained surplus C-130s from the Air Force and immediately exchanged them with IAR. Tr. 164:10-17. 41 C.F.R. § 101-46.202(c)(10) does not authorize an agency to exchange property acquired from another agency until one year after acquisition.

In addition to the three C-130s involved in this case, IAR acquired two C-130s through Roy Reagan, a private broker who had obtained the C-130s through the exchange program. Tr. 107:3-18. IAR assigned the Reagan C-130s to a financing company. The Forest Service learned that the financing company was attempting to sell the aircraft, and advised IAR in a letter dated February 23, 1993:

> In an effort to ensure that there exists among private contractors an airtanker fleet that is adequate to meet aerial firefighting needs, excess United States Government aircraft suitable for use as airtankers were exchanged for older aircraft. This exchange, however, was conducted by no official of the United States Government with proper authority to do so. You should be aware that the United States Government is not bound by the unauthorized acts of its agents or employees.

> You also should be aware that because these aircraft are surplus military aircraft on the U.S. Munitions List and certified only in the Restricted Category by the Federal Aviation Administration (FAA), use of the aircraft is limited to firefighting purposes. Finally, you should be aware of the implications of 18 U.S. Code 641 with regard to any actions you may take.
>
> We advise you not to take any action with respect to these aircraft that is prejudicial to the interests of the United States.

DX 11.

On November 27, 1998, the Forest Service's contracting officer, Ronald Hooper, issued a final decision. DX 14. The decision stated that the Forest Service had no authority to enter into the exchange agreement. The decision continued: "Accordingly, I must declare the exchange agreement void from the beginning. Being void from the beginning means that no title exchange ever occurred. The Government still owns the former military aircraft. T&G/Douglas County Aviation (now doing business as International Air Response) still possesses title to its historic aircraft. The Government hereby requests the return of its aircraft and is prepared to return your historic aircraft." IAR did not comply with the contracting officer's request to return the C-130s to the Government.

After IAR was dismissed from a related case in the United States District Court for the District of Arizona (United States v. Reagan, Civ. No. 97-169), IAR filed its complaint in this Court on January 20, 2000. The complaint sought rescission of the contracting officer's decision that voided the exchange agreement, costs, and attorney fees. The complaint was filed more than one year after the contracting officer's November 27, 1998 final decision. Because the Contract Disputes Act, 41 U.S.C. § 609 requires complaints to be filed within one year after the contracting officer's decision, the Government moved to dismiss the complaint for lack of

jurisdiction. This Court granted the motion to dismiss in a decision dated June 1, 2001.[4] Upon appeal, the United States Court of Appeals for the Federal Circuit reversed, holding that IAR's time to file its complaint was tolled by a stay order that had been issued by the Arizona district court.[5]

After remand to this Court, the Government filed an answer and counterclaim. The counterclaim sought $2,400,000 pursuant to theories of unjust enrichment and implied-in-law contract.

ARGUMENT

I. Applicable Law

28 U.S.C. § 2412(d)(2)(A) provides as follows:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the Untied States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

EAJA "is a waiver of sovereign immunity which must be strictly construed." Levernier Constr., Inc. v. United States, 947 F.2d 497, 502 (Fed. Cir. 1991). EAJA allows the Court to make an award against the Government "only to the extent explicitly and unequivocally provided." Fidelity Constr. Co. v. United States, 700 F.2d 1379, 1386 (Fed. Cir.) (legislatively

4 International Air Response v. United States, 49 Fed. Cl. 509 (2001).

5 International Air Response v. United States, 302 F.3d 1363 (Fed. Cir. 2002), reh'g denied, 324 F.3d 1376 (2003).

overruled upon other grounds, see Pub. L. 99-80, § l(c)(2)(B), 99 Stat. 184). Thus, when evaluating an EAJA application, a court must interpret and apply the law strictly, and not attempt to "do equity" in a way that is not in accord with the statute. Levernier Constr., 947 F.2d at 502-03. Moreover, a court must take "great care . . . not to expand liability beyond that which was explicitly consented to by Congress." Fidelity, 700 F.2d at 1387. "EAJA was not intended to be an automatic fee-shifting device in cases where the [plaintiff] prevails." Gavette v. Office of Pers. Mgmt., 808 F.2d 1456, 1467 (Fed. Cir. 1986).

II. IAR Has Not Established That It Qualifies As An Eligible "Party" Under EAJA

As a threshold matter, a prevailing party must show that it meets certain eligibility requirements in the EAJA statute. Scarborough v. Principi, 541 U.S. 401, 408 (2004). In the case of a corporation, the statute defines an eligible "party," as an entity whose "net worth . . . did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B). If the plaintiff can demonstrate its statutory eligibility for an award, the burden shifts to the Government to show that its position was substantially justified or that special circumstances exist that would make an award unjust. Scarborough, 541 U.S. at 407-08; 28 U.S.C. § 2412(d)(1)(A).

A plaintiff is required to provide evidence that it satisfied the EAJA size limitation on the day the complaint was filed. See Al Ghanim Combined Group Co. v. United States, 67 Fed. Cl. 494, 496 (2005) ("Failure to submit documentation of plaintiff's net worth, for the purpose of determining whether plaintiff qualifies for an award under EAJA, renders an application deficient."); Lion Raisins v. United States, 57 Fed. Cl. 505, 510-11 (2003); Scherr Constr. Co. v. United States, 26 Cl. Ct. 248, 251 (1992) ("The failure to submit information consistent with

generally accepted accounting principles is fatal to plaintiff's application."). Net worth is determined by subtracting total liabilities from total assets. Id. at 383 (citing City of Brunswick v. United States, 849 F.2d 501, 503 (11th Cir. 1988)).

It is well-settled that the plaintiff bears the burden to establish that it does not exceed the statutory net worth limitation. Fields, 29 Fed. Cl. at 382. IAR's application does not discuss the net worth eligibility requirement. Because IAR has presented no evidence that it is an eligible party for EAJA purposes, the application should be denied.

## II. IAR's EAJA Application Should Be Denied Because The Government's Position Was Substantially Justified

EAJA provides for an award of fees and other expenses to a prevailing party only if the Court finds that the position taken by the United States was not substantially justified and no special circumstances existed that would make an award unjust. 28 U.S.C. § 2412(d)(1)(A). The United States Supreme Court has held that an EAJA award is precluded if the Government's position is "'justified in substance or in the main' – that is, justified to a degree that could satisfy the reasonable person." Pierce v. Underwood, 487 U.S. 552, 565 (1988). This standard is a "deferential threshold" which generally authorizes an award of attorney fees pursuant to the EAJA "only where the Government offered no plausible defense, explanation, or substantiation for its action." Griffin & Dickson v. United States, 21 Cl. Ct. 1, 6-7 (1990) (citing Beta Sys., Inc. v. United States, 866 F.2d 1404, 1406 (Fed. Cir. 1989) and Devine v. Sutermeister, 733 F.2d 892 (Fed. Cir. 1994)). The issue of substantial justification is decided case-by-case, and the "mere fact that the United States lost the case does not show that its position in defending the case was not substantially justified." Broad Ave. Laundry & Tailoring v. United States, 693 F.2d 1387,

1391 (Fed. Cir. 1982). Therefore, to avoid EAJA fees, we need not demonstrate that our decision to litigate was based upon a substantial probability of prevailing. Trone v. United States, 3 Cl. Ct. 690, 692-93 (1983). Instead, we need only show that our position had a reasonable basis in law and fact. Pierce, 487 U.S. at 565.

The primary issue in this case was whether IAR qualified as a bona fide purchaser for value pursuant to the Federal Property and Administrative Services Act, 40 U.S.C. § 544 (the "safe harbor"). That statute provides that an "instrument executed by or on behalf of an executive agency purporting to transfer title or other interest in surplus property under this chapter is conclusive evidence of compliance with the provisions of this chapter concerning title or other interest of a bona fide grantee or transferee for value and without notice of lack of compliance."

The Government argued that: (1) as a matter of law, the Federal Property and Administrative Services Act was subordinate to the Espionage Act, 18 U.S.C. § 793, which required IAR to return the aircraft to the United States upon demand; and (2) IAR was not a bona fide purchaser for value because it knew or should have known from the discrepancy in the values of the exchanged aircraft that the exchange was not authorized at law. Both of these arguments, though unsuccessful, had a reasonable basis in law and fact that substantially justified the Government's position.

A. The Government's Legal Defense Was Substantially Justified

In our pre-trial brief, we argued that the Espionage Act required IAR to comply with the contracting officer's demand for the return of the aircraft. The Espionage Act provides that "[w]hoever lawfully having possession of, access to, control over, or being entrusted with any . . .

instrument, appliance, or note relating to the national defense . . . willfully retains the same and fails to deliver it on demand to the officer or employee of the United States entitled to receive it" violates the act. 18 U.S.C. § 793(d). To demonstrate that the C-130 aircraft is an "instrument [or] appliance] . . . relating to the national defense," we showed that the C-130 fell within a category of demilitarized aircraft that the President has placed on the United States Munitions List, 22 C.F.R. § 121.1 (Category VIII) and 22 C.F.R. § 121.3. See also DX 11. The Munitions List reflects the President's determination the listed items constitute "defense articles" that are subject to export restrictions pursuant to the Arms Export Control Act, 22 U.S.C. §§ 2778 and 2794.

We also argued that pursuant to precedents of the United States Court of Claims, the Espionage Act precluded IAR from relying upon the safe harbor of the Federal Property and Administrative Services Act. The Court of Claims held in Dubin v. United States, 289 F.2d 651, 654 (Ct. Cl. 1961) that the Federal Property and Administrative Services Act "could not have been intended to make it lawful, in the face of the Espionage Act, for one to hold on to national defense devices which he had purchased because of a mistake on the part of the selling official." Id. at 654. In a subsequent opinion in the same litigation, the Court of Claims affirmed the trial commissioner's finding held that the items in question (radar and radio equipment) qualified as instruments or appliances relating to national defense for purposes of the Espionage Act. Dubin v. United States, 363 F.2d 938, 942 (Ct. Cl. 1966) ("Dubin II"). Judge Davis filed a concurring opinion in Dubin II because he disagreed with the majority's "apparent holding that retention of the equipment involved here would have violated the Espionage Act even if the items were all unclassified." 363 F.2d at 943.

In its opinion in this case, the Court distinguished the Dubin cases, finding that the Government had failed to show that the C-130 "contained elements unknown to the general public" or that the C-130A is "'classified' outside of its inclusion on the Munitions List." Opinion at 16. We respectfully disagree with this finding, and suggest that it is contrary to Dubin II, which did not limit application of the Espionage Act to classified items. Although we failed to persuade the Court that our interpretation was correct, our interpretation of the Espionage Act and the Dubin cases was not unreasonable. Because the Government's Espionage Act defense was plausible and was supported by statute and precedent, the Court should find that the Government's legal position was substantially justified.

B. The Government's Factual Position Was Substantially Justified

We contended at trial that IAR was not a bona fide purchaser for value because IAR knew or should have known that the exchange program was an unauthorized give-away, as opposed to a lawful exchange for value. As evidentiary support, we introduced letters that IAR had written to elected officials. DX 1 and 2. In those letters, IAR complained about its initial exclusion from the exchange program, which IAR believed put it at a competitive disadvantage against its competitors. IAR wrote that its competitors were trading aircraft "that have only salvage value of approximately $5,000.00 each for a $2,500,000.00 C-130 aircraft." The letters concluded: "The problem we have is we paid real money for our C-130's and can't compete with a give-away program, which is being administered by a select basis to two certain operators which eliminates the competition."

At trial, IAR's principal, Woody Grantham, testified upon direct examination that he considered the program to be a give-away: "But what the Forest Service did is took those four

operators, brought them up to my class of air tankers with new give[-]away airplanes which I knew nothing about." Tr. 50:10-13. Mr. Grantham's testimony, coupled with IAR's letters, indicated that IAR knew that the exchange program was a give-away disguised as an exchange for value. According to the letters, the Forest Service was giving away C-130s worth $2.5 million per aircraft in exchange for aircraft worth only $5,000. Although the Court, citing other evidence, concluded that the program was not in fact a give-away, Opinion at 12, the Government was substantially justified in relying upon IAR's own characterization of the exchange program.

In its EAJA application, IAR refers to the Forest Service's decision to eliminate C-130As from the aerial firefighting program in 2002, after a fatal accident involving a C-130A. Pl. App. at 11-12. The Forest Service made that decision some 13 years after IAR's 1989 exchange agreement. The fact that the Forest Service contracted for C-130A firefighting services from 1989 until 2002 is further evidence in support of the Government's position that the C-130A was a valuable firefighting aircraft at the time of the exchange, which is the only relevant time.

## III. In The Alternative, Any EAJA Award Should Be Limited To Post-Appeal Litigation At The Statutory Rate Of $125 Per Hour For Attorney Fees

In the alternative, if the Court were to determine that the Government's position was not substantially justified in its entirety, then the Court should place two limits upon any EAJA award: (1) IAR should not recover any fees or expenses incurred from the filing of the complaint through the Federal Circuit's April 7, 2003 decision that denied rehearing of IAR's successful appeal; and (2) IAR should not recover attorney fees in excess of the statutory limit of $125 per hour pursuant to 28 U.S.C. § 2412(d)(2)(A).

There can be little doubt that the Government's position was substantially justified in filing a motion to dismiss the complaint, for reasons that the Court found persuasive in its June 1, 2001 order that granted the motion. Although the Federal Circuit reversed that decision, there is nothing in the appellate court's September 4, 2002 opinion, 302 F.3d 1363, that suggests that the Government's position was not substantially justified.

The Government petitioned for rehearing by the Federal Circuit panel, which denied the petition in a published opinion dated April 7, 2003. In that opinion, the Federal Circuit panel clarified that the basis of its September 4, 2002 opinion was actually the doctrine of collateral estoppel, and not res judicata. 324 F.3d at 1378. The Federal Circuit panel also addressed the Government's collateral estoppel and sovereign immunity arguments, which had not been squarely addressed in the September 4, 2002 opinion. 324 F.3d at 1379-80. The Federal Circuit panel did not suggest that the Government's petition for rehearing was not substantially justified. The fact that the panel issued a published decision denying rehearing, rather than a routine unpublished denial, indicates that the Federal Circuit panel believed that significant issues were raised in the Government's motion for rehearing.

Even IAR believes that the Government's position upon the motion to dismiss "may have been substantially justified." Pl. App. at 8. From this concession, it appears that IAR acknowledges that a reasonable person could conclude that the Government's position was substantially justified. Because the test is whether the Government was "justified to a degree that could satisfy the reasonable person," Pierce, 487 U.S. at 565, the Court should deny IAR's petition insofar as it seeks fees and expenses incurred prior to the Federal Circuit's April 7, 2003 decision that denied rehearing of the appeal.

In no event should the Court award attorney fees exceeding the limit of $125 per hour that is set forth in 28 U.S.C. §2412(d)(2)(A). That subsection of EAJA provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." In its EAJA application, IAR does not address the $125 limit.

The burden is upon IAR to establish that special factors warrant an award in excess of $125 per hour. Carmichael v. United States, 70 Fed. Cl. 81, 84 (2006). The Supreme Court has narrowly interpreted the "special factor" language of EAJA:

> [T]he "special factor" formulation suggests Congress thought that [$125] an hour was generally quite enough public reimbursement for lawyers' fees, whatever the local or national market might be. If that is to be so, the exception for "limited availability of qualified attorneys for the proceedings involved" must refer to "qualified for the proceedings" in some specialized sense, rather than just in their general legal competences. We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question – as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language.

Pierce, 487 U.S. at 572. Moreover, the Supreme Court found that the following factors did not fall within the definition of special factors: the novelty and difficulty of issues, the undesirability of the case, the work and ability of counsel and the result obtained. Id. at 573.

Because IAR did not address the $125 limit in its application, there is no basis upon which the Court could find that IAR is entitled to a cost-of-living or special factor adjustment.

Counsel's assurances that his hourly rates were "reasonable," even if true, do not justify an award in excess of the $125 limit set by Congress.

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiff's EAJA application in its entirety. In the alternative, the Court should deny plaintiff's application insofar as it seeks fees and expenses incurred prior to April 7, 2003, and the Court should limit any attorney fee recovery to the rate of $125 per hour.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/ Roger A. Hipp
ROGER A. HIPP
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Tel. (202) 305-3091
Fax (202) 307-0972

November 15, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 15th day of November 2007, a copy of the foregoing "DEFENDANT'S" was electronically filed. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

s/ Roger A. Hipp