# In the United States Court of Federal Claims

No. 00-428C
(Filed February 15, 2008)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * | |
| **INTERNATIONAL AIR RESPONSE, INC.,** Plaintiff, | Practice and procedure; Equal Access to Justice Act, 28 U.S.C. § 2412 (2000); substantial justification; whether Government's position that plaintiff was not *bona fide* purchaser for value, 40 U.S.C. § 544 (2000), was substantially justified; whether Government's position that return of planes was required by Espionage Act, 18 U.S.C. § 793 (2000), was substantially justified. |
| v. | |
| **THE UNITED STATES,** Defendant. | |
| * * * * * * * * * * * * * * * * * * * | |

Randall S. Papetti, Phoenix, AZ, for plaintiff. Lewis and Roca, LLP, of counsel.

Roger A. Hipp, Washington, DC, with whom was Acting Assistant Attorney General Jeffrey S. Bucholtz, for defendant.

## MEMORANDUM OPINION AND ORDER

**MILLER**, Judge.

The Application for Attorneys' Fees of International Air Response, Inc. ("plaintiff"), is before the court after trial and entry of judgment in plaintiff's favor. Plaintiff asserts that it is a prevailing party in a civil action brought against the United States and entitled to attorneys' fees, costs, and other expenses incurred during the course of the civil action. Plaintiff argues that the position of the Government, through the United States Forest Service (the "Forest Service") and the Department of Justice, both before suit was filed and during litigation, was not "substantially justified" pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) (2000) ("the EAJA"). The travails associated with plaintiff's recovery in this case reflect poorly on the Government; now the Government has compounded them by trumpeting the reasonableness of its litigation position on the merits of plaintiff's claim. Argument is deemed unnecessary.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff's EAJA application is the culmination of litigation that has spanned nearly fourteen years; hopefully, it is also its conclusion. The court issued its trial opinion and judgment for plaintiff on March 12, 2007. Int'l Air Response, Inc. v. United States, 75 Fed. Cl. 604 (2007) ("Int'l Air IV"). Familiarity with the background facts described in that opinion is presumed; the portions material to the EAJA application follow.

Plaintiff's predecessor entered into an agreement with the Forest Service to provide three historic aircraft to museums designated by the Forest Service. In exchange plaintiff was to receive three C-130A military transport planes, which plaintiff could modify for use as air tankers in its firefighting operations. The Forest Service, during the relevant time frame, entered into numerous such exchange agreements with a variety of aviation companies. Following criminal charges levied against an independent airplane broker and a Forest Service official responsible for most agreements, although not plaintiff's agreement, the United States Department of Agriculture, which has authority over the Forest Service, began in 1989 to scrutinize these exchange agreements.

In 1994 an action under the False Claims Act, 31 U.S.C. § 3729 (1994), was brought against all of the aviation companies involved in these exchanges, including plaintiff. See United States *ex rel.* Eitel v. Reagan, 898 F. Supp. 734 (D. Or. 1995). After a series of appeals and remands, the case was transferred to the United States District Court for the District of Arizona. On April 29, 1998, plaintiff responded with a motion for summary judgment. On November 28, 1998, while plaintiff's motion for summary judgment was pending before the federal court in Arizona, the contracting officer issued a decision: (1) declaring the agreement between the Forest Service and plaintiff illegal and (2) determining that the Government was entitled to the return of the C-130A aircraft. On February 1, 1999, the district court issued an order staying the enforcement of the action by the contracting officer and staying any deadlines pertinent to that order for appeal or review. On October 13, 1999, after granting plaintiff's motion for summary judgment, the district court lifted the stay. See United States *ex rel.* Eitel v. Reagan, No. 97-169 (D. Ariz. Oct. 13, 1999).

On July 21, 2000, plaintiff filed its complaint in the United States Court of Federal Claims. On June 1, 2001, this court granted defendant's motion to dismiss for lack of jurisdiction and directed dismissal of the complaint without prejudice, ruling that the district court's stay did not toll the deadline for filing an action under the Contract Disputes Act, 41 U.S.C. § 609 (2000) (the "CDA"). See Int'l Air Response, Inc. v. United States, 49 Fed. Cl. 509 (2001) ("Int'l Air I"). The United States Court of Appeals for the Federal Circuit reversed, holding that defendant was foreclosed from collaterally attacking the district court's authority to enter the stay. See Int'l Air Response, Inc. v. United States, 302 F.3d

1363 (Fed. Cir. 2002) ("Int'l Air II"). The Federal Circuit denied rehearing and rehearing *en banc*. See Int'l Air Response Inc. v. United States, 324 F.3d 1376 (Fed. Cir. 2003) ("Int'l Air III").

As explained more fully in the discussion section of this opinion, the Government is responsible for years of fruitless settlement discussions and rescheduled trial dates. Following the completion of a one-day, two-witness trial, the court concluded that plaintiff proved that it was a *bona fide* purchaser for value of the subject aircraft, thereby qualifying for the safe harbor provided by 40 U.S.C. § 544 (2000), and that defendant did not discharge its burden of proof on its counterclaim for the value of the aircraft. Int'l Air IV, 75 Fed. Cl. at 604; see 40 U.S.C. § 544 (2000) ("A deed, bill of sale, lease, or other instrument executed by or on behalf of an executive agency purporting to transfer title or other interest in surplus property under this chapter is conclusive evidence of compliance with the provisions of this chapter concerning title or other interest of a bona fide grantee or transferee for value and without notice of lack of compliance.").

Plaintiff's EAJA application was filed on September 14, 2007, following dismissal of defendant's appeal of the merits decision to the Federal Circuit. Plaintiff asserts that it was the prevailing party in a civil action against the Government, both with respect to its claim for relief and defendant's counterclaim, and that the Government's position was not substantially justified. Originally, plaintiff's application sought $153,212.40 in attorneys' fees and costs totaling $20,649.39. 1/ In its reply brief, plaintiff reduced the amount of attorneys' fees to $92,350.00.

## DISCUSSION

1. Fees and costs under the EAJA

The EAJA directs that courts

> shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review

---

1/ Plaintiff states that this represents "90% of the amount incurred and billed." Pl.'s Br. filed Sept. 14, 2007, at 8. Plaintiff "voluntarily reduced its fee request by 10% to reduce the Court's task of having to closely scrutinize each line item of plaintiff's bills and to avoid any arguments from the Government about the reasonableness of any specific line items in the invoices." Id. at 8 n.4.

> of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). In other words, a party is entitled to fees and other expenses when: (1) the claimant is a "prevailing party"; (2) the Government's position was not substantially justified; (3) no "special circumstances make an award unjust"; and (4) the fee application is timely submitted and supported by an itemized statement. 28 U.S.C. § 2412(d)(1)(A)-(B); see Comm'r, INS v. Jean, 496 U.S. 154, 158 (1990). The EAJA does not establish a presumption that a plaintiff is entitled to attorneys' fees; rather, the burden is shifted to the Government to prove that its position was substantially justified. See Libas, Ltd. v. United States, 314 F.3d 1362, 1365 (Fed. Cir. 2003) (reversing for abuse of discretion where Government provided no evidence that its position was substantially justified and trial court did not explain sufficiently its basis for denying EAJA application).

No dispute is present that plaintiff prevailed in a "civil action" against the United States. 2/ In its trial opinion, the court noted that the result was "quite one-sided." Int'l Air IV, 75 Fed. Cl. at 608. The EAJA, however, does impose certain eligibility requirements. When plaintiff is a corporation, an eligible party is an entity with a net worth not exceeding "$7,000,000 at the time the civil action was filed, and which [cannot have] more than 500 employees at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B). See Scarborough v. Principi, 541 U.S. 401, 408 (2004). Defendant initially argued that because plaintiff did not provide evidence that it satisfied the EAJA size limitation in its EAJA application, it could not be a "party" within the meaning of the statute. See Def.'s Br. filed Nov. 15, 2007, at 6-7. Plaintiff submitted evidence that it satisfied the EAJA size limitation in attachments to its reply to the Government's response to its EAJA application. See Pl.'s Br. filed Dec. 19, 2007, at Tabs B-C. Plaintiff pointed to Bazalo v. West, 150 F.3d 1380, 1382-84 (Fed. Cir. 1988), for authority that a party may supplement its EAJA application to provide proof regarding net worth. In a notice filed on January 8, 2008, defendant withdrew its argument that plaintiff was not a "prevailing party" within the meaning of the EAJA. Def.'s Notice filed Jan. 8, 2008, at 1-2.

Plaintiff is a prevailing party within the meaning of the EAJA. Defendant also does not suggest that any special circumstances are present that would make an award unjust. Furthermore, the fee application was submitted timely and supported by itemized statements.

---

2/ Defendant contested plaintiff's qualifications to stand as a "prevailing party," but not its success on its claim and against defendant's counterclaim.

See Pl.'s Br. filed Sept. 14, 2007, at Ex. A. The only substantial point of dispute is whether the Government's positions in defending against plaintiff's claim and prosecuting its counterclaim were "substantially justified."

2. Whether the Government's position was substantially justified

The Supreme Court has held that the Government's position is "substantially justified" where it is justified "in substance or in the main," that is, where it is "justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565 (1988). This standard is synonymous with the "reasonable-basis-in-both-law-and-fact" formulation previously adopted by many courts of appeals prior to the Pierce decision. See id. Substantially justified should not be taken to mean "justified to a high degree;" substantial justification means "more than merely undeserving of sanctions for frivolousness; that is assuredly not the standard for Government litigation of which a reasonable person would approve." Id. at 565-66; see White v. Nicholson, 412 F.3d 1314, 1315 (Fed. Cir. 2005) ("[T]he position of the Government is substantially justified when it is justified to a degree which would satisfy a reasonable person.").

The phrase "position of the United States" in the EAJA encompasses more than just arguments before a given court; it also "refers to the [G]overnment's position throughout the dispute, including not only its litigating position but also the agency's administrative position." Doty v. United States, 71 F.3d 384, 386 (Fed. Cir. 1995) (internal citations omitted).

Defendant contends that plaintiff's success on the merits does not itself render the Government's position not substantially justified. See Def.'s Br. filed Nov. 15, 2007, at 7-8; see also Broad Ave. Laundry & Tailoring v. United States, 693 F.2d 1387, 1391 (Fed. Cir. 1982) ("The mere fact that the United States lost the case does not show that its position in defending the case was not substantially justified."). The Government argues that

> (1) as a matter of law, the Federal Property and Administrative Services Act was subordinate to the Espionage Act, 18 U.S.C. § 793, which required [plaintiff] to return the aircraft to the United States upon demand; and (2) [plaintiff] was not a *bona fide* purchaser for value because it knew or should have known from the discrepancy in the values of the exchanged aircraft that the exchange was not authorized at law.

Def.'s Br. filed Nov. 15, 2007, at 8. Acknowledging that these arguments were unsuccessful on the merits, the Government defends them as having "a reasonable basis in law and fact that substantially justified the Government's position." Id.

Plaintiff contends the Government never had a case on the merits and that defendant failed to carry its burden to show that its position was substantially justified. Plaintiff notes that defendant did not raise the Espionage Act argument "until years into this litigation." Pl.'s Br. filed Dec. 19, 2007, at 4. Pointedly, plaintiff reminds the court that "it appears the Government's first mention of the Espionage Act occurred in approximately 2004." Id. at 5. Plaintiff charges that defendant's argument involving the Espionage Act was always pretextual, because "the Government always was willing to allow [plaintiff] to keep the planes if it paid a large sum to the Government" in the form of a settlement. Id.

Plaintiff also attacks defendant's assertions that it was substantially justified in arguing that plaintiff was not a *bona fide* purchaser for value because plaintiff knew, or should have known, from the discrepancy in the values of the exchanged aircraft that the exchange was not authorized at law. Plaintiff asserts that the "difference in value between what the Government exchanges and what the Government receives" under 40 U.S.C. § 544 "is largely irrelevant to determining whether someone was a *bona fide* grantee." Pl.'s Br. filed Dec. 19, 2007, at 6. Plaintiff cites to United States v. Jones, 176 F.2d 278, 288-90 (9th Cir. 1949), to support its position that "a mere difference in value between what the Government accepted and what the citizen received in no way undermines the legality of the transaction," rendering the Government's position "legally wrong." Pl.'s Br. filed Dec. 19, 2007, at 7. Plaintiff emphasizes that "the Government itself could not internally agree whether the exchanges were authorized or not for several years. For years, the Forest Service insisted the program was in fact authorized and sought to justify it on several grounds." Id. (internal citations omitted). Defendant's sole witness testified that "the Forest Service initially took the position that it had authority to make the exchange, but that the Department of Agriculture's Office of Inspector General disagreed." Int'l Air IV, 75 Fed. Cl. at 611.

Defendant has the burden to establish "that the position of the United States was substantially justified." Scarborough, 541 U.S. at 414. As the court recorded in its trial opinion, defendant's Espionage Act arguments were "largely abandoned . . . at trial." Int'l Air IV, 75 Fed. Cl. at 613. Defendant at trial contended that the facts in this case were comparable to those in Dubin v. United States, 289 F.2d 651 (Ct. Cl. 1961), and Dubin v. United States, 363 F.2d 938 (Ct. Cl. 1966), where the provisions of the Espionage Act required a purchaser of certain surplus classified radar equipment return the equipment to the Government. Tellingly, the court found that "defendant has neither shown that the C-130A contains elements that were unknown to the general public when sold as surplus property, nor demonstrated that the C-130A was 'classified' outside of its inclusion on the Munitions List." Int'l Air IV, 75 Fed. Cl. at 614. On this basis the court was "unable to conclude that the Espionage Act applies in this case." Id.

The Supreme Court has observed that "the fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified. Conceivably, the Government could take a position that is not substantially justified, yet win." Pierce, 487 U.S. at 569. The Government's arguments in this case were thin, and the cases that it cited for support distinguish themselves from the factual circumstances of the case that the Government was pressing. Nor is the Government's position that plaintiff was not a *bona fide* purchaser substantially justified. Trial established that plaintiff was a *bona fide* purchaser for value qualifying for the protection of 40 U.S.C. § 544. In arguing to the contrary, defendant put on only one witness, and even that witness "lacked conviction in his own testimony." Int'l Air IV, 75 Fed. Cl. at 611.

By order filed May 13, 2004, trial was scheduled to begin on November 15, 2004. As the court noted, however, a trial date "proved to be ephemeral." Id. at 608. At the parties' request, the court vacated that date as the pretrial status conference segued into settlement discussions. See Order entered Nov. 18, 2004. After more than one year of settlement discussions, including assistance from an assigned settlement judge, the parties represented that "the case appears close to finally being resolved." Status Report filed Dec. 8, 2005, at 1. The settlement, monitored by the court, dragged on through July 17, 2006. At that time, defendant reported that an issue involving yet another agency, the Federal Aviation Administration, "may force [defendant] to conclude that the settlement proposal is not feasible." Int'l Air IV, 75 Fed. Cl. at 608 (internal quotations omitted). Plaintiff relates in support of its EAJA application that "[w]hat actually occurred is that the Forest Service itself decided that a provision in the draft settlement term sheet involving actions the Forest Service was to take vis-à-vis the [Federal Aviation Administration] was not acceptable to the Forest Service." Pl.'s Br. filed Sept. 14, 2007, at 5-6. Instead, plaintiff accuses "the Forest Service [of backing out] and refus[ing] to follow through on the proposed settlement it had negotiated; the FAA did not preempt the deal." Id. at 6.

Trial began and concluded on November 15, 2006. The court orally advised the parties of its decision, and informed the parties that it would defer issuing a written opinion for thirty days to give the parties a final opportunity to settle the case. Settlement was not forthcoming. On December 18, 2006, plaintiff filed a Notice of Non-Settlement and requested that the court issue its opinion and order.

After a telephonic notification by both parties that settlement had been reached and was awaiting final approval within the Department of Justice, the court stayed issuance of the trial opinion. Nevertheless, defendant and plaintiff notified the court separately on January 19, and 22, 2007, respectively, that a consummated settlement was no longer possible. By order of February 6, 2007, the court lifted the stay, then issued the trial opinion on March 12, 2007. See Int'l Air IV, 75 Fed. Cl. at 608-09.

Although plaintiff does not seek attorneys' fees incurred during the incubation of the dispute before the Forest Service, the Government's conduct during the course of the litigation, whether instigated by the client Forest Service or on the Department of Justice's own accord, was dilatory and, as trial proved, not justified to the degree that a reasonable person would be satisfied. Plaintiff's modest recovery on this application in no way compensates for the frustration of parrying the Government's improvised defenses on the merits to resist making plaintiff whole for the loss of its aircraft.

This court originally upheld defendant's position on its motion to dismiss for lack of jurisdiction because the district court's stay did not toll the deadline to file an action under the CDA, 41 U.S.C. § 609. See Int'l Air I, 49 Fed. Cl. at 509. On September 4, 2002, the Federal Circuit reversed, holding that defendant was barred by *res judicata* from relitigating the validity of the Arizona district court's stay. See Int'l Air II, 302 F.3d at 1368-69. On April 7, 2003, the Federal Circuit denied rehearing and rehearing *en banc*. See Int'l Air III, at 1378-80. Given that plaintiff did not file its complaint in this case until July 21, 2000, well after the December 8, 1999 deadline pursuant to the CDA, the Government was substantially justified in advancing the position that the federal district court's stay could not equitably toll the CDA deadline. While not commenting on the merits of the Government's position, the Federal Circuit ruled that defendant's failure to appeal the authority to issue a stay rendered the district court's order *res judicata*. See Int'l Air II, 302 F.3d at 1368-69. Arguments relating to jurisdiction tend to be substantially justified, particularly when the arguments concern the authority of disparate courts in multiple civil actions pertaining to the same transactions. See RAMCOR Servs. Group v. United States, 185 F.3d 1286 (Fed. Cir. 1999) (Government's position substantially justified when arguing jurisdictional issue of first impression). For this reason the Government's litigation position was substantially justified until April 7, 2003, when the Federal Circuit denied rehearing and rehearing *en banc* of its reversal. See Int'l Air III, 324 F.3d at 1378-80.

3. Amount of fees and costs

Plaintiff's application sought $153,212.40 in attorneys' fees. Defendant responded that the hourly rate should be limited to $125.00 per hour, pursuant to 28 U.S.C. § 2412(d)(2)(A) (2000). Plaintiff thereafter conceded that it had "overlooked the $125 cap limitation that presumptively applies to EAJA applications" and that "its request as detailed in its Memorandum was overstated." Pl.'s Br. filed Dec. 19, 2007, at 8. Plaintiff accordingly reduced the amount to $92,350.00, reflecting the total amount of fees, recalculated at $125.00 per hour. Id.

The Government's position at trial was not substantially justified, but the Government's position pertaining to jurisdiction that led to the initial dismissal of the case

and appeal to the Federal Circuit was substantially justified. As a result, plaintiff is not entitled to an award of attorneys' fees incurred prior to April 7, 2003, the date on which the Federal Circuit denied rehearing of the appeal. Plaintiff therefore is entitled to $60,237.50 in attorneys' fees. See Pl.'s Br. filed Dec. 19, 2007, at 8. Plaintiff has submitted itemized statements with its application as required by 28 U.S.C. § 2412(d)(1)(B). The court has reviewed the briefs and appendices accompanying its EAJA application, see Pl.'s Br. filed Dec. 19, 2007, at 8; Pl.'s Br. filed Sept. 14, 2007, at Ex. A. Defendant does not contest the documentation for the amount claimed. The court finds plaintiff's submission to be in order. See Naporano Iron & Metal Co. v. United States, 825 F.2d 403, 404 (Fed. Cir. 1987) (EAJA application must include itemized statement of fees and costs).

Plaintiff seeks costs totaling $20,649.39. These costs include computer research charges of $18,660.42, court fees of $189.00, photocopying expenses of $1,195.36, long-distance telephone charges of $363.61, and a transcript expense of $241.00. Plaintiff also seeks anticipated attorneys' fees and costs incurred in filing and briefing its EAJA application.

The EAJA allows recovery of "reasonable and necessary expenses of an attorney incurred or paid in preparation for trial of the specific case before the court" at the rate "that these expenses [are] customarily charged to a client where the case is tried." Oliveira v. United States, 827 F.2d 735, 744 (Fed. Cir. 1987). Plaintiff is entitled to recover expenses incurred after April 7, 2003. Although the appendices accompanying its EAJA application are listed chronologically and denote clearly which attorneys' fees were incurred before April 7, 2003, they do not denote which expenses were incurred before that date and those incurred thereafter.

## CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED**, as follows:

1. Plaintiff's EAJA application is granted in the amount of $60,237.50 for attorneys' fees.

2. By February 20, 2008, plaintiff shall file with the court 1) an itemized statement of its expenses incurred after April 7, 2003, and 2) an itemized statement of its fees and expenses incurred in connection with filing and briefing its EAJA application.

3. By February 29, 2008, defendant shall file any objection to plaintiff's submissions pursuant to ¶ 2 hereof.

s/ Christine O.C. Miller

______________________________

**Christine Odell Cook Miller**
Judge