IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INTERNATIONAL AIR RESPONSE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 00-428 |
| | ) | (Judge Christine O.C. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR RECONSIDERATION**

Pursuant to Rule 59(a) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court reconsider its opinion dated February 15, 2007, and the resulting judgment dated March 4, 2008. In its opinion, the Court granted the application of plaintiff, International Air Response, Inc. ("IAR"), for attorney fees and expenses pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. For the reasons stated below, the Court erred in finding that the Government was not substantially justified in relying upon the Espionage Act, 18 U.S.C. § 793. We therefore respectfully request that the Court reconsider its opinion, vacate the judgment, and enter a new order denying IAR's EAJA application.

ARGUMENT

I. The Standards For A Motion For Reconsideration

Reconsideration is appropriate to address and correct an erroneous opinion "based on manifest error of law, or mistake of fact." Hi-Shear Tech. Corp. v. United States, 55 Fed. Cl. 418 (2003). The showing required to warrant reconsideration is that a "manifest error of law or mistake of fact" resulted in judicial mistake. Fifth Third Bank of Western Ohio, 52 Fed. Cl. 637, 639 (2002). While a motion for reconsideration is not an appropriate vehicle in which to present

old evidence or revisit issues that have already been decided, see Van Skiver v. United States, 751 F. Supp. 1522, 1523 (D. Kan. 1990); National Metal Finishing Co. v. Barclays American/Commercial, Inc., 899 F.2d 119, 123 (1st Cir. 1990), it is appropriate "to prevent manifest injustice." Fifth Third Bank of Western Ohio, 52 Fed. Cl. at 639, citing Seldovia Native Ass'n, Inc. v. United States, 36 Fed. Cl. 593, 594 (1996); Aerolease Long Beach v. United States, 31 Fed. Cl. 342, 376 (1994), aff'd, 39 F.3d 1198, 1994 WL 572795 (1994) (unpublished table opinion).

## II. The Court's Interpretation Of The Espionage Act Is Contrary To Precedent

In its February 15, 2008 opinion, the Court rejected our argument that we were substantially justified in relying upon the Espionage Act and the decisions of the United States Court of Claims in Dubin v. United States, 289 F.2d 651 (Ct. Cl. 1961) ("Dubin I"), and 363 F.2d 938 (Ct. Cl. 1966) ("Dubin II"). The Court found that the Dubin cases were distinguishable because here the Government had not demonstrated at trial that the C-130A aircraft was "'classified' outside of its inclusion on the Munitions List." Opinion at 6, quoting International Air Response, Inc. v. United States, 75 Fed. Cl. 604, 611 (2007).

We respectfully contend that the Court's interpretation of the Espionage Act is contrary to both Dubin II and a subsequent Court of Claims decision, AST/Servo Systems, Inc. v. United States, 449 F.2d 789 (Ct. Cl. 1971). These precedents state that the Government may rely upon the Espionage Act in cases involving unclassified items, so long as those items are related to the national defense.

As we noted in our opposition to IAR's EAJA application, Judge Davis filed a concurring opinion in Dubin II because he disagreed with the majority's "apparent holding that retention of

the equipment involved here would have violated the Espionage Act even if the items were all unclassified." 363 F.2d at 943. As Judge Davis recognized, the majority in Dubin II did not limit its holding to unclassified items. Instead, the majority looked first at the nature of the items in question, then determined: "Based simply on the foregoing, we would have little difficulty in finding that the instruments repossessed by the Department of the Navy were 'instruments' or 'appliances' 'relating to the national defense' as those terms were used in section 793 of the Espionage Act . . . ." 363 F.2d at 942. Only after making that determination did the majority note, as further support, that the items were "'classified' in the security sense of the word." Id. Here, the Government was substantially justified in construing Dubin II the same way Judge Davis did: as holding that the Espionage Act applies to sales of instruments and appliances relating to the national defense, regardless of whether the items are classified.

In AST/Servo, Judge Davis, this time writing for a unanimous court, held that the Government may apply the Espionage Act to sales of unclassified items. AST/Servo involved a sale of missile guidance sets. 449 F.2d at 789. The Air Force subsequently demanded that the plaintiff return the items, and the plaintiff cooperated. Id. at 789-90. The plaintiff then brought a takings claim based upon the market value of the items. Id. at 790.

The Court of Claims noted in AST/Servo that sales of surplus equipment fall into three categories: (1) classified items, as in Dubin; (2) unclassified items that are unconnected to the national defense, which fall outside the Espionage Act; and (3) items that are unclassified yet related to the national defense, which the Government has the right to recapture pursuant to the Espionage Act. Id. at 790-91. AST/Servo, like this case, involved the third category.

The Court of Claims held in AST/Servo that the Air Force's selling agents had not complied with procedures for demilitarizing the items. As a result, the sale was invalid, notwithstanding the plaintiff's claim that it was an innocent purchaser for value. Id. at 792. The Court of Claims emphasized: "Dubin is conclusive on this point; the Espionage Act is the catalyst which changes the rule." Id.

Here, as in Dubin and AST/Servo, the issue properly before the Court was whether the items in question were instruments or appliances relating to the national defense, and not whether the items were classified. As we argued previously, the President's decision to place C-130 aircraft upon the Munitions List reflects his determination that the aircraft are "defense articles" for purposes of the Arms Export Control Act, 22 U.S.C. §§ 2778 and 2794. From that determination, it logically follows that the C-130 aircraft are items relating to the national defense.

Although we have failed to persuade the Court that our interpretation of the Espionage Act and the Dubin cases was correct, our position was substantially justified. EAJA's substantial justification test requires only that "a reasonable person could think the position correct even though it is not." Beta Systems, Inc. v. United States, 866 F.2d 1404, 1406 (Fed. Cir. 1989) (citing Pierce v. Underwood, 487 U.S. 552, 566 n.2 (1988)).

CONCLUSION

For the foregoing reasons, the Court should reconsider its February 15, 2008 order, vacate the March 4, 2008 judgment, and issue a new order denying plaintiff's application for attorney fees and expenses.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/ Roger A. Hipp
ROGER A. HIPP
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Tel. (202) 305-3091
Fax (202) 307-0972

March 18, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 18th day of March 2008, a copy of the foregoing "DEFENDANT'S MOTION FOR RECONSIDERATION" was electronically filed. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

s/ Roger A. Hipp