IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INTERNATIONAL AIR RESPONSE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 00-428C |
| | ) | |
| vs. | ) | |
| | ) | (Assigned to the Honorable Christine |
| THE UNITED STATES, | ) | O.C. Miller) |
| | ) | |
| Defendant. | ) | E-Filed March 25, 2008 |
| | ) | |

**IAR'S RESPONSE TO THE UNITED STATES' MOTION FOR RECONSIDERATION**

In its February 15, 2008 Opinion in which it ruled that IAR was entitled to a fee award, the Court observed: "The travails associated with plaintiff's recovery in this case reflect poorly on the Government; now the Government has compounded them by trumpeting the reasonableness of its litigation position on the merits of plaintiff's claim." (Op. at 1). Undeterred, in response to the Court's modest fee award to IAR, the Government has filed a motion for reconsideration, trumpeting yet again the supposed reasonableness of its litigation position. In reality, the Government simply rehashes arguments about the Espionage Act that the Court already has rejected at least twice and which are no more persuasive now than before.

In the Court's February 15 opinion, the Court empathized with IAR's "frustration of parrying the Government's improvised defenses." (Op. at 8). The Court's observation about the improvised nature of the Government's various defenses is particularly keen with respect to the Government's Espionage Act assertion. The motion for

reconsideration ignores that (a) litigation over the planes went on for ten years before the Government even mentioned the Espionage Act; (b) the Espionage Act was not mentioned in the Contracting Officer's decision of which this action is an appeal from; (c) the Espionage Act is not mentioned in the Government's answer to IAR's complaint or in the Government's counterclaim; and (d) the Government's defense based on the Act was not only "improvised" but entirely pretextual given that the Government always was willing to let IAR keep the planes if it paid the Government a chunk of cash.

The Court should have little difficulty denying the motion on its merits. Attempting to squeeze its rehashed arguments into the framework of acceptable standards for a motion for reconsideration, the Government's motion proceeds on the premise that the Court misinterpreted Espionage Act case law to require that a C-130A or elements thereof be "classified" in order to be within the scope of the Act. But the Court made no such mistake, and the Government's claim that it did is built upon on an obviously incomplete quotation from the Court's opinion. Moreover, the Government now overlooks that at trial it produced no evidence whatsoever to actually support its Espionage Act claim, regardless of how the Act is interpreted.

The motion should be denied and IAR's fee award should be increased to partially compensate it for having to respond to this needless motion.

## I. The Government's Espionage Act Argument Is Without Merit.

### A. The Espionage Act Played Little Role in This Dispute.

The Government's motion proceeds as if the Espionage Act was at the heart of the parties' dispute, which it was not. Litigation over the planes went on for *ten years* before

the Government raised the Espionage Act in 2004. After raising the argument, the Government did virtually nothing to develop it and, by trial in 2006, the Government's "Espionage Act arguments were 'largely abandoned.'" (2/15/08 Op. at 6). Between the time the Government belatedly raised the issue in 2004 and the 2006 trial the parties were engaged in lengthy settlement efforts in which the Government always was fine with IAR keeping the planes provided it wrote the Government a check – a fact the Court has noted and the Government has never contested.

**B. The Premise of the Government's Motion Is False.**

The Government is aware of the substantial case law holding that a motion for reconsideration is not appropriate simply to ask the Court to revisit arguments it already has considered and addressed. *See, e.g., Four Rivers Invests. v. United States*, 78 Fed. Cl. 662 (2007). The Government says that reconsideration is warranted because the "Court's interpretation of the Espionage Act is contrary to precedent." (Mot. at 2). More specifically, the Government claims that the Court interpreted the Act as requiring that the C-130A aircraft be "classified" in order to fall within the Act. (*Id.*) The Government then cites authority for the proposition that unclassified information or items can be within the scope of the Act and that, consequently, the Court's analysis was in error. (*Id.* at 2-4).

The premise the Government uses to set up its argument on page 2 of its motion – that the Court interpreted the Espionage Act to be inapplicable to unclassified items or information – is a false one. The Court never held that the C-130A had to be classified in order to be covered by the Act. The Government bases its argument on a

mischaracterization of a quote in the Court's March 12, 2007 opinion, which in full relevant part provided: "Given that defendant has neither shown that the C-130A contains elements that were unknown to the general public when sold as surplus property, nor demonstrated that the C-130A was 'classified' outside of its inclusion on the Munitions List, the court is unable to conclude that the Espionage Act applies in this case." 75 Fed. Cl. 604, 614 (2007) (emphasis added).[1] Nowhere in this passage does the Court state that an item must be classified for the Act to apply. In fact, as the full quote makes clear, the Court was not at all interpreting the Act as requiring that the information or technology at issue be "classified," but rather that the technology or information in question be shown to be something more sensitive than simply related to the military, which undoubtedly is the law.

The Government proceeds to argue that the Court failed to comply with the *Dubin* and *AST/Servo* cases because in those cases unclassified items supposedly were held to be within the scope of the Act. Again, the Court did not in any way rule that the Espionage Act is limited to "classified" situations. Moreover, in its post-trial ruling the Court discussed the *Dubin* cases at great length and cited *AST/Servo* twice, hardly ignoring them. *See* 75 Fed. Cl. at 613-14. The Court referenced its prior discussion of these cases in its March 18, 2008 Opinion on attorneys' fees and costs. (Op. at 6).

Quite simply, the Government mischaracterizes the Court's ruling in order to then suggest that it was contrary to precedent. Its premise for reconsideration is false and,

---

[1] The Government initially appealed from this opinion, but abandoned and then dismissed its appeal prior to the deadline for filing its opening brief.

consequently, its March 18, 2008 attack on the legal analysis in the Court's March 13, 2007 opinion ought to be denied.

### C. The Government Offered Almost No Evidence to Support its Espionage Act Argument.

The Government's motion treats the Espionage Act issue before the Court as if it was purely a legal issue of statutory interpretation, about parsing words in cases or statutes to determine the outer reaches of the Act. In doing so, the Government overlooks that it failed to present virtually any evidence to support its Espionage Act contention, regardless of how any nuances of statutory interpretation might have been resolved.

As noted, the Government's "Espionage Act arguments were 'largely abandoned . . . at trial.'" (Op. at 6). The Government at trial presented a single witness: Ron Hooper, a long-time Forest Service official who understandably articulated the Forest Service's position but had nothing to say about Espionage Act or national security concerns. The Government called no one from the Department of Defense, the Air Force or any intelligence agency and presented no report, letter or other evidence emanating from those agencies that raised any Espionage Act or national security concerns caused by air tanker companies owning the C-130As. In fact, none of those agencies have ever, to our knowledge, indicated that IAR's possession of the 1950s-era planes creates a national defense concern.[2]

[2] If any such claim had actually been made it would be quite extraordinary given that the planes are flown in over fifty countries around the world, have been owned by private American companies for over twenty-five years, and are no longer even flown by the Air Force.

Furthermore, as the Court correctly concluded, the Government at trial presented no evidence that the C-130As contain confidential technology or classified information. The Government presented no judicial opinion in which a court held that a C-130A (or anything remotely like it) to be within the scope of the Espionage Act. The Government presented no argument at all about why IAR owning the planes presented a national security concern requiring return of the planes.

The Government's only "evidence" that the Espionage Act applies is that C-130As are still included as military planes listed on the Munitions List. While the Munitions List and related FAA type certificate restrictions require that authority be granted for sales of C-130As and other former military planes to certain countries, they, almost by definition, contemplate the legitimacy of private ownership of the planes. As the Court was absolutely correct in concluding, just because something is listed on the Munitions List in no way establishes that it is encompassed by the Espionage Act. 75 Fed. Cl. at 613-14.

That after a dozen years of litigation all the Government could do to establish an Espionage Act claim was to point to the Munitions List speaks volumes as to the complete pretext it was for the Government to be claiming that its conduct in this case was motivated by national security concerns.

### D. The Government Ignores that It Was Unprepared to Compensate IAR

Even if the Espionage Act were deemed to apply, the Government had a duty to compensate IAR for its out-of-pocket losses related to the Government's desire to rescind the transaction. 75 Fed. Cl. at 614. The Government never made any such offer and, in

fact, never did anything along these lines except to demand that IAR pay the Government $2.4 million, even though the Forest Service deemed the planes unsafe to fly in 2002.

## II. Conclusion

IAR's counsel has spent a minimum of five hours reviewing the motion, researching the issues raised, and drafting this response. An amended judgment reflecting an increased fee award of $625 is thus appropriate.

We ask that the motion be denied and the amended judgment be issued as soon as convenient for the Court.

Respectfully submitted,

Date: March 25, 2008

By: s/ Randy Papetti
Randy Papetti
Lewis and Roca LLP
40 North Central Avenue
Phoenix, Arizona 85004-4429
602-262-5337 Telephone
602-734-3865 Facsimile
Attorney of Record for Plaintiff
International Air Response

CERTIFICATE OF FILING

I hereby certify that on March 25, 2008, the foregoing Plaintiff's Response to Defendant's Motion for Reconsideration was electronically filed with the U.S. Court of Federal Claims with a notice of electronic filing sent to all parties by the court's electronic filing system.

s/ Carole Hanger